No. 26-1568

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

IN RE: MOTION TO QUASH ADMINISTRATIVE SUBPOENA TO RHODE
ISLAND HOSPITAL

CHILD ADVOCATE FOR RHODE ISLAND, et al.,

Petitioners-Appellees,

v.

UNITED STATES OF AMERICA,

Respondent-Appellant.

On Appeal from the United States District Court
for the District of Rhode Island

**RESPONSE IN OPPOSITION TO
MOTION FOR INJUNCTION PENDING APPEAL**

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney
General*
JORDAN C. CAMPBELL
*Deputy Assistant Attorney General*

SARAH WELCH
JOHN BAILEY
BRANTLEY T. MAYERS
*Attorneys*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202)890-9874*

**INTRODUCTION**

Yesterday afternoon, the U.S. District Court for the Northern District of Texas ordered Rhode Island Hospital (RIH) to produce certain documents to that court, to be held *in camera* without disclosure to the government, during the pendency of this and related litigation over an administrative subpoena that the government issued last year. RIH did not appeal that order or seek a stay from either the district court in Texas or the Fifth Circuit. (RIH did seek to stay a related earlier order issued by that court, but the Fifth Circuit denied relief.) Instead, the Rhode Island Child Advocate (Advocate)— a third-party claiming an interest in a subset of the disputed documents—has filed an emergency motion in this Court for an injunction pending appeal. The Advocate asks this Court, in the first instance, to enjoin RIH from complying with the injunction issued by the Northern District of Texas.

That requested relief is extraordinary: an injunction requiring a party to flout an order of a separate federal district court issued within its jurisdiction over a pending case before it. Such an injunction would reflect a shocking departure from ordinary principles of judicial comity in any circumstances. But it is particularly unwarranted here, for a host of procedural and substantive reasons.

At the outset, the Advocate's motion is badly procedurally confused. It asks this Court to issue an injunction pending appeal—but this is *the government's* appeal, not *the Advocate's*. If the government loses it, the result would be an order affirming the District of Rhode Island's order quashing the subpoena, not an injunction, let alone an

1

injunction against RIH (which is not even the party against which the Advocate asserted claims). If the Advocate wants *additional* relief beyond what the District of Rhode Island ordered (and against a different party), it needs to seek that relief in the first instance from the district court. Of course, that would only lead to yet another procedural hurdle—one federal district court cannot overrule an order issued by a sister federal district court. Of course, the Advocate is free to move to intervene in the Northern District of Texas, seek appropriate relief there, and appeal if needed. But it cannot launch a collateral attack on a binding court order by asking a different Court of Appeals, in different litigation, to enjoin a different party from complying with that order. The federal judicial system simply cannot work this way.

All of that aside, the motion also plainly fails as a substantive matter, because the Advocate cannot identify any cognizable harm flowing from RIH's provision of the responsive documents to the Texas court, where they will be held—without access by the government—until the conclusion of the appeals. The whole point of *in camera* review is to preserve everyone's rights and privileges while litigation unfolds; it is backwards to treat *in camera* production as irreparable harm in itself. The purpose of the court's order is to preserve the status quo—and the responsive documents—in light of what the Northern District of Texas viewed as RIH's attempts to circumvent court orders. Since that order does not involve any disclosure to the government, it does not harm the Advocate at all, let alone rise to the level of serious irreparable harm warranting the extraordinary and immediate relief that the Advocate seeks here.

2

For all of those reasons, there is no need for the Court at this juncture to assess the likely outcome of the government's appeal of the order quashing the subpoena—however that appeal is ultimately resolved, it could not justify an injunction forbidding RIH from complying with another court's order. Regardless, the government is likely to prevail on appeal. The administrative subpoena at issue was validly issued as part of a valid criminal investigation into ubiquitous federal crimes, such as misbranding by pharmaceutical companies and fraudulent billing by healthcare providers. In holding otherwise, the district court misunderstood the nature of these offenses and wrongly shielded an entire industry from federal criminal scrutiny.

## BACKGROUND

For nearly a year, the Department of Justice (DOJ or Department) has been investigating potential offenses under the Food, Drug, and Cosmetic Act (FDCA) in connection with the provision of puberty blockers and cross-sex hormones to minors. Hsiao Decl. ¶¶ 3, 32-39, 45 (Dkt. 1-3). For example, the FDCA prohibits misbranding, which occurs when a drug's labeling does not bear adequate directions for its intended uses, or contains any false or misleading information 21 U.S.C. §§ 352, 331(a), (b), (c), (k); and other federal healthcare laws prohibit the making of false statements in relation to claims to public and private insurance payors, 18 U.S.C. § 1035; and fraud on patients and insurance payors, *id.* § 1347. Drug manufacturers and distributors are regularly prosecuted for misbranding when they promote drugs for off-label uses.

3

As part of its investigation, the Department served the HIPAA subpoena at issue on RIH on July 9, 2025, with a return date of August 7, 2025. Dkt. 28-2 at 38, 67. In the intervening 285 days, RIH has produced just one six-page document consisting of a list of names of hospital employees and certain drugs.  Hsiao Decl. ¶ 46.

Faced with RIH's prolonged noncompliance, the Department moved to enforce the subpoena in the Northern District of Texas, which is one district where this investigation is being carried on and therefore a proper venue under the statute. 18 U.S.C. § 3486(c).  *See* Dkt. 28-2 at 2-14.  The district court signed an order enforcing the subpoena. *In the Matter of Administrative Subpoena 25-1431-032*, 4:26-mc-6 (N.D. Tex. 2026 Apr. 30, 2026) (Dkt. 2 at 1).  Rather than move for reconsideration, RIH noticed an appeal and unsuccessfully moved for a stay pending appeal of the enforcement order in both the district court and the Fifth Circuit.  *In the Matter of Administrative Subpoena 25-1431-032*, 4:26-mc-6 (N.D. Tex. May 10, 2026) (Dkt. 12) (order denying stay pending appeal); *United States of America v. Rhode Island Hospital*, 26-10431 (5th Cir. May 12, 2026) (Dkt. 34) (same).

In parallel, on May 4, the Advocate launched a collateral attack by moving to quash the same subpoena in the District of Rhode Island below, citing the Northern District of Texas's order as the cause for the district court's immediate intervention. Dkt. 1.  RIH thereafter successfully intervened in the Rhode Island action and filed its own motion to quash, thereby voluntarily subjecting itself to the prospect of conflicting court orders.  *See* Dkt. 28.

On May 13, 2026, Judge Mary McElroy issued an order purporting to quash the subpoena that the Northern District of Texas had already enforced. Dkt. 44 at 23-24. Judge McElroy made clear that her order did not affect the Texas court's order enforcing the subpoena. *Id.* However, Judge McElroy also generally enjoined the government from receiving or retaining documents responsive to the subpoena. *Id.* The government has appealed from that order and injunction but has not sought a stay of the injunction pending appeal.

Yesterday, the Northern District of Texas held a status conference on the matter there. Thereafter, the court entered an order recognizing that its enforcement order remained binding and also recognizing that the government is presently unable to receive the documents due to the Rhode Island court's injunction. *In the Matter of Administrative Subpoena No. 25-1431-032*, No. 4:26-mc-00006-O, ECF No. 26 (N.D. Tex. May 18, 2026). The court specifically stated that RIH's litigation tactics in the Rhode Island action were an attempt "to circumvent the authority of this Court and the Fifth Circuit" and " to collaterally attack the Enforcement Order." *Id. a*t 4-5. Thus, the court concluded that RIH's "flagrant attempts to avoid compliance with lawful orders" made it "necessary to hold the materials responsive to the subpoena *in camera* pending outcome of the appeals," a step the court determined is "necessary to ensure the preservation of the materials subject to the subpoena." *Id.* at 5. So to preserve the status quo, the court issued an order requiring RIH to produce the contested documents to the court *in camera*, where they will remain and "inaccessible to the Government for

5

the pendency of the appeals." *Id* at 5-6. RIH has not sought to appeal or stay that order. Nor has the Advocate sought to intervene in the Texas proceedings to protect its rights. Instead, the Advocate filed an emergency motion in this Court asking for an injunction against RIH pending appeal.

## ARGUMENT

The Court should deny the motion for an injunction compelling another party to disobey another court's order. The Advocate's motion is procedurally improper for multiple reasons—it asks this Court for relief that it never sought below, that it would not be entitled to even if the government loses this appeal, and that amounts to an improper collateral attack on an order of another district court. Even setting that aside, an *in camera* submission of RIH records to the Texas court will not inflict irreparable harm on the patients the Advocate represents. Nor would an injunction redress any such harm; it would simply subject RIH to contempt whether it complies with the Northern District of Texas's order or not. Finally, although the Court need not reach this issue now, the Advocate is not likely to prevail on the merits in this Court.

### I.   The Advocate's Motion Is Procedurally Improper.

Without a cause of action against RIH and without first seeking relief in the district court, the Advocate seeks an injunction in an appeal she did not file and asks this Court to order an intervenor to disregard a validly issued order from the Texas Court. That is procedurally bizarre and dooms this motion.

First, the Advocate cannot seek relief against a party (the hospital) against whom she has no cause of action. The proceeding in the district court was a motion filed by the Advocate seeking to quash a subpoena issued by the Department. The Advocate did not assert any cause of action against RIH, nor could she have done so. At minimum, the Advocate does not explain what that cause of action is, or why it is likely to prevail in asserting claims against RIH. But without a cause of action against the hospital, the Advocate cannot seek relief in this Court against it.

A cause of action is a prerequisite to injunctive relief in federal court, *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir. 1978) (explaining that injunctive relief must be "based on a valid cause of action alleged in the complaint"); *see Findlay v. McAllister*, 113 U.S. 104, 115 (1885) ("Unless the plaintiff has a cause of action against the defendants, he is without remedy."), but the Advocate lacks one against RIH. The district court did not find otherwise below and avoided entering any relief directed at RIH. And in this Court, the Advocate fails to point to any cause of action that would allow her to seek injunctive relief against a private entity. This basic failure requires denial of the Advocate's motion, because a party cannot obtain "intermediate relief" of a different "character as that which may be granted finally" in the case. *DeBeers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1945). In other words, courts must deny motions for preliminary relief seeking "a remedy that w[ould] not be provided" even if it succeeded "in its underlying … suit." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 637 (9th Cir. 2015).

7

Similar doctrine bars the Advocate's request for an injunction pending appeal that is different from, and broader than, any relief it could obtain if it prevailed on appeal. An injunction pending appeal serves to preserve the court's ability to grant effective ultimate relief, not to award substantive relief that is unavailable at the conclusion of the appeal. *See Together Employees v. Mass General Brigham Inc.*, 19 F.4th 1, 7 (1st Cir. 2021) ("A preliminary injunction preserves the court's ability to grant final relief."). If appellees prevail in defending the District of Rhode Island's quashal order, the proper appellate disposition would be affirmance of that order. In seeking distinct affirmative relief that would not follow from success on the merits of this appeal itself, the Advocate's requested injunction would not preserve the status quo pending appeal. Again, that mismatch is fatal. *See De Beers*, 325 U.S. at 220.

Second, the Advocate has failed to comply with the requirements of FRAP 8, which this Court has strictly applied even in emergencies. That rule ordinarily requires a movant to first seek relief in the district court. *See* Fed. R. App. P. 8(a)(1). And this Court has required strict compliance, often refusing to consider arguments that were not first brought to the district court's attention. *See, e.g.*, *Rhode Island v. Trump*, 155 F.4th 35, 46 (1st Cir. 2025); *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 145 F.4th 39, 52 (1st Cir. 2025). But the Advocate skips that step, claiming it would be "impracticable" to seek relief first in the district court. Mot. 7. The purported reasons—tonight's deadline and RIH's limited remedial options—fail to convince. Neither one precludes the Advocate from first (or, at minimum, simultaneously)

returning to the district court—especially when, as the record demonstrates, the district court is fast to move. And this is not merely a technicality here—as explained above, it is entirely unclear what basis the Advocate has to seek relief against RIH, and none of these issues has been briefed or decided below. This Court should not indulge the Advocate's failure to comply with ordinary procedures.

Third, the Advocate requests an order from this Court directing RIH to flout an order entered by a federal district court in Texas. This request is equal parts egregious and unprecedented. To state the obvious, the Fifth Circuit, rather than the First, has appellate jurisdiction over any order issued by the Texas court. *See* 28 U.S.C. § 1294(1). And therefore it is to the Fifth, rather than the First, that a party must go to seek relief from the Texas court's order. *See* Dkt. 9 at 6 ("Plaintiff may pursue intervention, reconsideration, appeal, and/or mandamus in the Northern District of Texas and/or the United States Court of Appeals for the Fifth Circuit. But an appeal of an order of the Northern District of Texas lies in the Fifth Circuit."). This basic proposition of federal law requires denial of the motion. Despite a tongue-in-cheek claim to the contrary, the Advocate asks this Court to order RIH to partially disobey the Texas court's order, in essence "vacat[ing]" part of that order pending the appeal in this case. Mot. at 2. That request is one this Court lacks jurisdiction to take up. And it is a request that runs afoul of basic principles of judicial comity. *Cf. UtahAmerican Energy, Inc. v. Dep't of Lab.*, 685 F.3d 1118, 1124 (D.C. Cir. 2012).

9

Each of these procedural defects is especially daunting in the context of a request for an injunction pending appeal, where "the bar is harder to clear" than a request for a stay pending appeal, because "an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by a lower court." *Boston Parent Coal. For Acad. Excellence Corp. v. Sch. Comm. Of Boston*, 996 F.3d 37, 44 (1st Cir. 2021). The Court should readily reject the Advocate's procedurally improper request for this extraordinary judicial intervention.

## II.     The Advocate Does Not Face Any Irreparable Harm.

Even if this motion were procedurally viable, it fails because the Advocate cannot show that RIH's compliance with a valid court order in Texas will irreparably harm her. Because "irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief," *Charlesbank Equity Fund II v. Blinds to Go, Inc.,* 370 F.3d 151, 162 (1st Cir. 2004), the Advocate must make a strong showing that a different federal court holding documents *in camera* will cause irreparable harm. The Advocate cannot make that showing, or anything close.

The Advocate argues that disclosing sensitive records will impair privacy interests, but because the Texas court will keep the sensitive records secret pending the outcome of the litigation, there is not a legally significant "disclosure" at all. The entire point of a court holding documents is that the privilege and privacy rights in the documents—if any—are preserved. Indeed, *in camera* review is commonly used to ensure that evidentiary privileges are *protected. Cf. Mohawk Industries v. Carpenter*, 558 U.S.

10

100, 108-09 (2009). As this Court has therefore instructed, "in camera reviews should be encouraged, not discouraged"—and certainly not enjoined. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 70 (1st Cir. 2011).

For her part, the Advocate does not cite a single case holding that transmitting documents to a federal court *in camera* constitutes irreparable harm. The substantive case that the Advocate cites for irreparable harm, *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004), is not about irreparable harm in the context of a stay at all, but rather about a trial subpoena. And in that opinion, the Seventh Circuit suggested that the government *would be permitted* to obtain sensitive medical records using the exact type of subpoena the government used here. *Id.* at 925 ("[S]ome federal statutes authorize subpoenas in terms that would override the HIPAA regulations. *See, e.g.*, 18 U.S.C. § 3486[.]").

The Advocate also cites a recent Supreme Court decision, but that decision addressed standing to assert First Amendment associational rights, not the higher standard of irreparable harm. *See First Choice Women's Res. Ctrs., Inc. v. Davenport*, 2026 WL 1153029, at *12 (2026). What suffices to establish "objectively reasonable chill" for standing purposes in that context, *id.* at *9, is not material to RIH's obligation in this posture. *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022). The Advocate offers nothing to support its entirely speculative fear of inadvertent publication of responsive documents while this appeal is pending.

Finally, even crediting every assertion the Advocate makes about irreparable harm, the Advocate still has not met its burden because the order issued by the Northern District of Texas to RIH would remain in effect and continue to bind RIH regardless.  Hence, even if this Court were to grant the extraordinary remedy that the Advocate seeks, it would not remedy her supposed harm.  It would simply put RIH between a rock and a hard place, requiring it to violate either the Northern District of Texas's injunction or this Court's injunction, with contempt risk either way.  Notably, RIH voluntarily chose to submit to the jurisdiction of the court below *after* the district court in Texas had granted the government's motion to enforce the subpoena—so it would be poorly positioned to object to the conflicting orders that it itself invited.

## III.    The Advocate Is Not Likely To Prevail On Appeal.

For the reasons above, there is no reason for the Court at this juncture to assess the likely outcome of the government's appeal.  But if the Court does so, the Advocate has not shown a strong likelihood of prevailing in defending the district court's order. She briefly advances three arguments, none persuasive. Mot. 10-13.

*First*, the Advocate argues that the district court was correct to conclude that the subpoena lacked a congressionally authorized purpose because "off-label prescribing by licensed practitioners is lawful under the FDCA."  Mot. 10.  But the Department could not have been clearer in the district court that "Rhode Island Hospital's potential FDCA liability in no way depends on physicians merely writing prescriptions for off-label use."  Dkt. 9 at 19.  Instead, the Department is investigating both (1) "whether

Rhode Island Hospital is a witness" to FDCA violations *by manufacturers or distributors* of relevant drugs and (2) "whether Rhode Island Hospital itself has violated the FDCA by causing distribution of misbranded drugs." *Id.* at 17. No one has questioned the validity of the first ground, but the district court wholly and inexplicably ignored it. And the district court simply mischaracterized the second. That reasoning is not likely to survive on appeal.

The larger problem with these arguments is that they are not cognizable in a subpoena enforcement action. A subpoena recipient "may not avoid an administrative subpoena on the ground that it has a valid defense to a potential subsequent lawsuit" and cannot raise "factual challenges based on a lack of statutory 'coverage'" of a recipient's activities. *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076-77 (9th Cir. 2001); *Donovan v. Shaw*, 668 F.2d 985, 989 (8th Cir. 1982) ("[A] subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute."); *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 5 (1st Cir. 1996) ("[Q]uestions concerning the scope of an agency's substantive authority to regulate are not to be resolved in subpoena enforcement proceedings."). That principle dates back over 80 years to Supreme Court decisions rejecting efforts to contest subpoenas based on claims that the investigating agency lacked authority over the matter. *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 213-14 (1946); *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 508-09 (1943).

That rule follows from the posture of such proceedings: "[s]ubpoena enforcement proceedings are designed to be summary in nature and an agency's investigations should not be bogged down by premature challenges to its regulatory jurisdiction." *Sturm*, 84 F.3d at 5. Were it otherwise, every subpoena recipient could seek to pre-litigate issues of potential liability or statutory coverage, which would "stop much if not all of investigation in the public interest at the threshold of inquiry." *Oklahoma Press*, 327 U.S. at 213. It is thus enough to say that "an administrative subpoena is to be enforced unless agency authority is plainly lacking." *EEOC v. Federal Express Corp.*, 558 F.3d 842, 851 n.3 (9th Cir. 2009).

*Second*, the Advocate defends the district court's conclusion that the subpoena "was issued for an improper purpose in bad faith," based on statements by administration officials expressing policy concerns about and opposition to gender-related medical interventions for minors. Mot. 11 (quoting Op. 18). That, too, is indefensible. An administration's policy view that particular practices or industries should be regulated or even banned cannot immunize those practices or industries from investigations regarding their compliance with existing federal law.

Given that the improper purpose inquiry asks whether an otherwise valid subpoena seeking evidence relevant to an investigation should nevertheless be quashed or denied enforcement, the Supreme Court has recognized that the subpoena recipient bears a "heavy" burden in proving the subpoena was issued pursuant to an improper purpose. *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978); *see United States v.*

14

*Arthur Andersen & Co.*, 623 F.2d 725, 729 (1st Cir. 1980); *Comley*, 890 F.3d at 542-43 (showing of "firm evidence" required); *United States v. Gertner*, 65 F.3d 963, 967 (1st Cir. 1995) (showing of "specific allegations of bad faith" and "reasonably particularized evidence"). Quashal is only warranted when the "sole purpose" is an improper one. *Gertner*, 65 F.3d at 970; *see Vahlsing v. Commercial Union Ins. Co.*, 928 F.2d 486, 490 (1st Cir. 1991) ("When process is employed for the purpose for which the law intends its use, no abuse of process occurs even though the person using the process may have an improper motive in addition to his lawful intention."); *Donaldson v. United States*, 400 U.S. 517, 533 (1971) (inquiring whether "the sole objective of the investigation is to" impermissibly use a civil subpoena to "obtain evidence for use in a criminal prosecution"); *Lynn v. Biderman*, 536 F.2d 820, 826 (9th Cir. 1976) ("It is not … a ground to deny enforcement of a subpoena that it is being employed for a wrongful purpose if there is also a legitimate purpose for the subpoena.").

The administration's policy views—which rest on a "rational basis," *United States v. Skrmetti*, 605 U.S. 495, 523 (2025)—cannot immunize entire industries or practices from scrutiny to determine if they have complied with existing federal law by establishing an improper purpose for any such investigation. The Advocate's conflation of policy opposition with improper purpose is misguided. An administration's policy statements on a particular topic have never amounted to an improper reason to issue a subpoena or further an investigation into whether a particular federal law has been violated. *Cf. Department of Com. v. New York*, 588 U.S. 752, 781 (2019) ("[A] court may

not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities."); *Trump v. Hawaii*, 585 U.S. 667, 706-07 (2018).  By that logic, an administration that takes a position on a particular policy question necessarily renders any investigation that touches on that policy as pretextual. That would preclude government investigations into anything touching on gender-related treatment—from fraud on government insurance to drug adulteration—effectively immunizing illegal conduct in this space.

The Advocate's view would also produce absurd and harmful consequences across the board.  Consider an administration that supports new gun control measures, while heightening its enforcement of existing regulations governing firearm dealers. Applying the Advocate's reasoning, subpoenas issued in any of those investigations would have to be quashed based on improper purpose.  The government's opposition to a particular industry or practice does not immunize that industry or practice from scrutiny to ensure that it is being carried out in a lawful manner.

*Third*, the Advocate defends the district court's conclusion that "compelled disclosure of the children's medical records would violate their Fourteenth Amendment right to information privacy."  Mot. 12. The Advocate curiously does not pause to wonder how the Fourteenth Amendment could apply to the federal government.  *See, e.g.*, *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) ("The Fourteenth Amendment … applies only to the states."); *United States v. Garcia-Carrasquillo*, 483 F.3d 124, 132 n.14 (1st Cir. 2007) (same).  Even if it did, the district court's conclusion that patients' informational

privacy rights foreclose disclosure of medical records held by a third-party business (RIH) and routinely shared with other parties (clinicians, laboratories, pharmacies, quality assurance and utilization reviewers, insurers, billing intermediaries, third-party administrators, accreditation bodies, and regulators) is irreconcilable with longstanding Supreme Court precedent holding that valid subpoenas seeking records from businesses do not violate the Fourth or Fifth Amendments. *Oklahoma Press*, 327 U.S. at 208 ("[T]he Fifth Amendment affords no protection by virtue of the self-incrimination provision, whether for the corporation or for its officers; and the Fourth, if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant."). The assertion of informational privacy rights is especially questionable when RIH expressly discloses to patients that it "may release" their "protected health information to a law enforcement official for a law enforcement purpose," "in response to … subpoenas," and for any of well over a dozen other reasons. Dkt. 9-1 at 7; *see id.* at 1-14.

The Advocate's novel attempt to substitute the Fourteenth Amendment for the Fourth or Fifth Amendments would grind enforcement of federal healthcare laws to a halt in contexts stretch far beyond this one: Investigations of FDCA and other health care offenses regularly involve use of patient records. Dkt. 1-3 at 3 (HIPAA subpoenas "are routinely used to obtain . . . medical, billing, and related information in federal healthcare offense investigations"), and permitting any patient to challenge any

17

subpoena touching on his or her health information would make enforcement of healthcare laws impossible. And it would split with multiple courts that have rejected privacy-based attempts to quash HIPAA subpoenas seeking medical records. *See In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000) (holding that government interest in obtaining documents for law enforcement purposes "outweighs the privacy rights of those whose [medical] records" are sought via a properly issued HIPAA subpoena, "particularly in light of the limitation placed on uses of subpoenaed information by § 3486"); *Doe v. United States*, 253 F.3d 256, 265 (6th Cir. 2001) (enforcing subpoena that included "requests for the files of patients"). The Court should soundly reject the district court's Fourteenth Amendment contrivance.

## IV.    The Remaining Factors Strongly Weigh Against an Injunction Pending Appeal.

Because the Advocate has not made an adequate showing on the first two factors, balancing the other factors is unnecessary. In any case, harm to the government and the public interest strongly weigh against the requested injunctive relief. Here, any harm to the Advocate is outweighed by the government's "uncontested interest" in the "faithful execution of law," *Newsom v. Trump*, 141 F.4th 1032, 1054 (9th Cir. 2025), and the public's interest in compliance with court orders, *see W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983) ("It is beyond question that obedience to judicial orders is an important public policy."). And, as explained, the Advocate faces no irreparable harm from an *in camera* production.

18

## CONCLUSION

The Court should deny the Advocate's motion.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney*
*General*

JORDAN C. CAMPBELL
*Deputy Assistant Attorney General*

SARAH WELCH
JOHN BAILEY

 /s/ *Brantley T. Mayers*
BRANTLEY T. MAYERS
*Counsel to the Assistant Attorney General*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 890-9874*
*Brantley.t.mayers@usdoj.gov*

MAY 2026

19

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,849 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Brantley T. Mayers*
Brantley T. Mayers

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system on all counsel of record.

/s/ *Brantley T. Mayers*
Brantley T. Mayers
