# United States Court of Appeals
## For the First Circuit

No. 26-1568

IN RE: MOTION TO QUASH ADMINISTRATIVE SUBPOENA TO RHODE ISLAND HOSPITAL

CHILD ADVOCATE FOR RHODE ISLAND, et al.,

Petitioners, Appellees,

v.

UNITED STATES OF AMERICA,

Respondent, Appellant.

Before

Gelpí, Montecalvo, and Dunlap,
Circuit Judges.

**ORDER OF COURT**

Entered: May 19, 2026

This motion for an injunction pending appeal concerns a subpoena issued in July 2025 to Rhode Island Hospital (the "Hospital") by the Department of Justice ("DOJ") pursuant to 18 U.S.C. § 3486 (the "Subpoena"). The Subpoena sought sensitive medical records, among them the personally identifying information and personal health information of children who had received gender-affirming care from the Hospital. Even after the compliance date for the Subpoena came and went, the parties continued to negotiate the particulars of the Hospital's compliance. Amidst those negotiations, the DOJ moved <u>ex parte</u> to enforce the Subpoena in the Northern District of Texas on April 30, 2026. Later that day, that court ordered the Hospital to comply with the Subpoena (the "April Texas Order"). Once it learned of the April Texas Order, the Hospital moved

for a stay in that district court and, when its motion was denied, appealed to the Fifth Circuit.[1]  The Hospital's appeal before the Fifth Circuit remains pending.

Shortly thereafter, the Child Advocate for the State of Rhode Island (the "Child Advocate"), the state official charged with protecting the legal rights of children in state care, moved to quash the Subpoena in the District of Rhode Island.  On May 13, the District of Rhode Island granted the Child Advocate's motion (the "Rhode Island Order").  The district court found that the Subpoena lacked a congressionally-authorized purpose, was issued for an improper purpose, and violated the Fourteenth Amendment privacy rights of the Hospital's child patients.[2]  The Rhode Island Order quashed the Subpoena and enjoined the DOJ from seeking or receiving patient-identifying information or protected health information responsive to the Subpoena.  The DOJ timely appealed the Rhode Island Order.

Yesterday, the Northern District of Texas -- concluding that the Rhode Island Order enjoined the Subpoena but not the April Texas Order enforcing it -- ordered the Hospital to turn over all records responsive to the Subpoena by this evening to that court for in camera safekeeping "pending the outcome of the appeals" of the April Texas Order and Rhode Island Order before the Fifth and First Circuits, respectively (the "May Texas Order").  In re Admin. Subpoena No. 25-1431-032, No. 4:26-mc-00006-O, Dkt. No 26 at 5 (N.D. Tex. May 18, 2026).

Now, the Child Advocate asks us to grant an injunction pending appeal that would order the Hospital not to turn responsive records over to anyone.  In deciding that request, we set aside a host of procedural problems, such as whether the Child Advocate may obtain an injunction against the Hospital that would subject the Hospital to mutually irreconcilable orders issued by courts in two different federal circuits, whether the injunction the Child Advocate now requests would be an impermissible collateral attack on the May Texas Order, or whether the Child Advocate may obtain such an order -- against a nonparty it has not sued -- by application to this court without first seeking relief in the district court.  See Fed. R. App. P. 8(a)(2).  We decline to grant an injunction pending appeal because the Child Advocate simply has not shown the irreparable harm required to obtain that "extraordinary" relief.  Nken v. Holder, 556 U.S. 418, 428 (2009).

When evaluating a request for injunctive relief pending appeal, we consider four factors:

> (1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent relief; (3) whether issuance of relief will

---

[1] The Hospital also sought a stay pending appeal.  The Fifth Circuit denied that motion, though it did not provide reasoning for the denial.  United States v. R.I. Hosp., No. 26-10431 (5th Cir. May 12, 2026), Dkt. No. 34-2.

[2] The district court also sharply criticized what it saw as the DOJ's mischaracterization, made in affidavits submitted to both the Northern District of Texas and District of Rhode Island, about the parties' ongoing negotiations related to the production.  In re Admin. Subpoena 25-1431-032 to R.I. Hosp., No. 1:26-mc-00007-MSM-AEM., 2026 WL 1329792, *1-3 (D.R.I. May 13, 2026).

> substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Respect Me. PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010).  The first two factors are "the most critical"; without showing an irreparable injury, a party may not obtain an injunction.  Id.

We detect no such irreparable injury.  In its order, the Northern District of Texas assured the parties that the documents would be held "in camera pending the outcome of the appeals" and would be provided to the DOJ only "should the courts of appeals rule against [the Hospital]."  In re Admin. Subpoena No. 25-1431-032, Dkt. No 26 at 5.  The Child Advocate contends that providing the records to anyone, even to a court, represents an irreparable harm given "the psychological and institutional costs of compelled production of sensitive medical records even when redacted."  Pet'r's. Mot. at 13 (citing Nw. Mem'l Hosp. v. Ashcroft, 362 F.3d 923, 930 (7th Cir. 2004)).  But the May Texas Order does not require the kind of "production" the Seventh Circuit considered in the case cited by the Child Advocate -- that is, production to, and review by, an adverse party.  The Child Advocate cites no authority for the proposition that providing anonymized records to a court -- particularly one that has assured the parties that the records will not be disseminated unless and until the parties' appeals are resolved -- could constitute irreparable harm.

Accordingly, the Child Advocate's motion for an injunction pending appeal is DENIED.

**DUNLAP, Circuit Judge, concurring.** I agree that Petitioner-Appellee, the Child Advocate for the State of Rhode Island ("Child Advocate"), has failed to carry her heavy burden to demonstrate that she is entitled to an injunction pending appeal. See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos., 996 F.3d 37, 44 (1st Cir. 2021); Together Emps. v. Mass Gen. Brigham Inc., 19 F.4th 1, 7 (1st Cir. 2021). Because she has failed to demonstrate irreparable harm, which "constitutes a necessary threshold showing for an award of preliminary injunctive relief," her request for injunctive relief must fail. Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). I write separately to underline additional concerns regarding the request for an injunction pending appeal.[3]

As an initial matter, there appear to be serious questions regarding the Child Advocate's standing to bring this motion in the first instance. To establish standing, the Child Advocate must show that any injury-in-fact "likely would be redressed by the requested judicial relief." FDA v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024). Accepting arguendo that the Child Advocate may bring this action on behalf of children in the care or custody of Rhode Island's Department of Children, Youth, and Families[4] and can establish cognizable harm, it appears doubtful that our court can redress any injury here. The injunctive relief the Child Advocate requests is effectively a stay of the order that the Northern District of Texas court issued -- a remedy appropriately pursued in that court or the Fifth Circuit.

There are related concerns arising from the current procedural posture. By asking us to enjoin the Rhode Island Hospital ("Hospital") from complying with the order issued by the Northern District of Texas, the Child Advocate is essentially asking us to review the merits of that decision.[5] There are at least two reasons why this extraordinary relief may be inappropriate. First, we do not have jurisdiction over the Northern District of Texas. 28 U.S.C. § 1294(1). The proper source of relief, therefore, is in that court or the Fifth Circuit. Second, this proceeding is essentially a collateral attack on the Northern District of Texas's decision to enforce a subpoena. Generally, parties are not free to launch collateral attacks on the decision of a coordinate court; "disagreements

---

[3] I note that the Child Advocate failed to first seek relief in the district court. Fed. R. App. P. 8(a)(1)(A); see Rhode Island v. Trump, 155 F.4th 35, 47 (1st Cir. 2025).

[4] Our court has not yet had occasion to hold that the Child Advocate has standing to bring actions in federal court on behalf of Rhode Island minors, see Kowalski v. Tesmer, 543 U.S. 125, 130 (2004) (requiring a "close relationship with the person who possesses the right" and some "hindrance to the possessor's ability to protect his own interests" to allow third-party standing (citation modified)), and the issue appears to have come up only twice in lower courts in our circuit. See Off. of the Child Advoc. on Behalf of Doe v. Providence Pub. Sch. Dep't, No. 25-cv-649-JJM-AEM, 2026 WL 1068031, *2-4 (D.R.I. Apr. 20, 2026); Off. of Child Advoc. v. Lindgren, 296 F. Supp. 2d 178, 185-86 (D.R.I. 2004).

[5] The Child Advocate claims that she is not asking us to "review, vacate, or direct any action by the Texas court," and instead is only requesting that we enjoin the Hospital from turning over materials to the Northern District of Texas. But that argument is little more than sophistry. For us to grant the relief requested, we would necessarily be commanding the Hospital to violate the Northern District of Texas's order.

with rulings in a suit are matters for appeal, not collateral litigation." Verogna v. Johnstone, 583 F. Supp. 3d 331, 336 (D.N.H. 2022), aff'd, No. 22-1364, 2022 WL 19795808 (1st Cir. Nov. 14, 2022). It is not clear that res judicata principles limit the collateral attack doctrine by allowing third parties to file separate actions rather than simply intervening in the first-filed action. See Fed. R. Civ. P. 24. The res judicata doctrine and collateral attack doctrine are "interrelated and sometimes confused, but they are not interchangeable." Pratt v. Ventas, Inc., 273 B.R. 108, 114 (W.D. Ky. 2002), aff'd, 365 F.3d 514 (6th Cir. 2004). While the res judicata doctrine generally binds only those parties to the prior litigation, see In re Iannochino, 242 F.3d 36, 43 (1st Cir. 2001) (requiring "sufficient identicality" between parties), there is reason to question whether the collateral attack doctrine should be so limited in this procedural context. See Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995) ("We have made clear that [i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." (internal quotation marks omitted) (alteration in original)). In the procedural posture of this case, both comity and the orderly administration of justice suggest that the second-filed case ought to proceed with due regard for the first-filed action. See UtahAmerican Energy, Inc. v. Dep't of Labor, 685 F.3d 1118, 1124 (D.C. Cir. 2012). In my view, the Child Advocate has made something less than a "strong showing" that her collateral attack is proper. See Rhode Island v. Trump, 155 F.4th 35, 42 (1st Cir. 2025) (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)).

There are other potential problems on the merits. We have made plain that "[s]ubpoena enforcement proceedings are designed to be summary in nature," and that subpoenas ought to be enforced "[a]s long as the agency's assertion of authority is not obviously apocryphal." United States v. Sturm, Ruger & Co., 84 F.3d 1, 5-6 (1st Cir. 1996); see U.S. Dep't of Just. v. Ricco Jonas, 24 F.4th 718, 726 (1st Cir. 2022). Subpoena enforcement proceedings are not the proper mechanism to litigate the underlying merits of the agency's authority. Sturm, Ruger & Co., 84 F.3d at 5; see United States v. Am. Target Advert., Inc., 257 F.3d 348, 353-54 (4th Cir. 2001). The district court below nevertheless concluded that the subpoena should be quashed because the government failed to present a viable misbranding theory. In doing so, the court focused only on the theory that off-label prescribing by licensed practitioners violates the Federal Food, Drug, and Cosmetic Act ("FDCA"). In re Admin. Subpoena 25-1431-032 to R.I. Hosp., No. 1:26-mc-00007-MSM-AEM, ECF No. 44, at 14-15 (D.R.I. May 14, 2026) (citing United States v. Facteau, 89 F.4th 1, 15 (1st Cir. 2023), and In re Celexa & Lexapro Mktg. & Sales Pracs. Litig., 915 F.3d 1, 5 (1st Cir. 2019)). It failed to analyze the government's theory that manufacturers and distributors may have violated the FDCA. See 21 U.S.C. §§ 331, 333(a), 355(a); Facteau, 89 F.4th at 15; In re Celexa, 915 F.3d at 5. Nor did it analyze the government's theory that the Hospital caused the distribution of drugs that are misbranded for off-label uses or conspired with manufacturers or distributors to misbrand such drugs. See 21 U.S.C. §§ 331, 355(a); 18 U.S.C. § 24(a)(2). Assuming these theories are valid, the district court's improper purpose reasoning would fall away. See United States v. Gertner, 65 F.3d 963, 967 (1st Cir. 1995). There are therefore serious questions about the merits of the district court's decision.

Nor are these merits-related questions limited solely to the government's theories underlying the subpoena; the district court also held that compelled disclosure of children's medical records would violate their Fourteenth Amendment right to informational privacy. In re Admin. Subpoena 25-1431-032 to R.I. Hosp., ECF No. 44, at 21. It did not explain how this purported

Fourteenth Amendment right limits the <u>federal</u> government.  <u>See</u> <u>United States</u> v. <u>García-Carrasquillo</u>, 483 F.3d 124, 132 n.14 (1st Cir. 2007).  And the ruling appears to be a substantial enlargement of our prior rulings relating to informational privacy.  <u>See</u> <u>Borucki</u> v. <u>Ryan</u>, 827 F.2d 836, 839-49 (1st Cir. 1987); <u>see also</u> <u>NASA</u> v. <u>Nelson</u>, 562 U.S. 134, 138 (2011) (assuming, without deciding, that a right to informational privacy exists).  At the very least, therefore, it does not appear that the Child Advocate can make a "strong showing" of a likelihood of success on this argument.  <u>See</u> <u>Together Emps.</u>, 19 F.4th at 7.

The constellation of these issues provides further support for our decision today to reject the Child Advocate's invitation to issue an injunction precluding compliance with an order issued by a court outside our jurisdiction.  I therefore concur.

By the Court:

Anastasia Dubrovsky, Clerk

cc: Hon. Mary S. McElroy, Hanorah Tyer-Witek, Clerk, United States District Court for the District of Rhode Island, Ross S. Goldstein, Lauren S. Zurier, Kevin M. Bolan, Patrick Runkle, Brantley Mayers, Jordan Campbell, Scott B. Dahlquist, Lynette J. Labinger, Miriam Weizenbaum, Paul R.Q. Wolfson, Amy Retsinas Romero, Pooja Boisture, Kevin Love Hubbard, Robin F. Thurston, Sarah Rice, Kathryn Gradowski, Julia Harvey, Shannon Minter, Gil Alan Bianchi Jr., Nicole Smith, Nina Monfredo, Amy Whelan, Karen Lee Loewy, Sonja Linnea Deyoe, Omar Gonzalez-Pagan, A.D. Sean Lewis, Adam Cambier, Allyson T. Slater, Jak Kundl, Morgan Carmen, Kristin K. Mayes, Robert Bonta, Philip J. Weiser, William M. Tong, Kathleen Jennings, Brian L. Schwalb, Kwame Raoul, Aaron M. Frey, Anthony G. Brown, Dana Nessel, Keith Ellison, Aaron D. Ford, Jennifer Davenport, Raul Torrez, Letitia James, Daniel A. Rayfield, Charity R. Clark, Nicholas W. Brown, Joshua L. Kaul, Stacey P. Nakasian, Kathryn M. Barber, Eric Olshan