No. 26-1568

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

IN RE: MOTION TO QUASH ADMINISTRATIVE SUBPOENA TO RHODE ISLAND HOSPITAL

CHILD ADVOCATE FOR RHODE ISLAND, et al.,

Petitioners-Appellees,

v.

UNITED STATES OF AMERICA,

Respondent-Appellant.

On Appeal from the United States District Court
for the District of Rhode Island

## REPLY BRIEF FOR APPELLANT

BRETT A. SHUMATE
  *Assistant Attorney General*
JORDAN C. CAMPBELL
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD
BRANTLEY T. MAYERS
  *Attorneys*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 890-9874*

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF THE ARGUMENT .................................. 1

ARGUMENT ........................................................................................................ 2

    I.    The district court erred in adjudicating the motions to quash given the first-filed Texas action. ............................................................... 2

    II.    The subpoena is valid and lawfully issued. ...................................... 8

        A.    Congress authorized issuance of the subpoena. ............................ 8

        B.    The subpoena's requests are relevant. ........................................... 12

    III.    No improper purpose justifies quashal. ........................................... 15

        A.    There is no improper purpose here. ................................................ 15

        B.    The district court's improper purpose conclusion could not justify quashal. ................................................................................. 18

    IV.    The subpoena's breadth does not justify quashal. .................................... 20

    V.    Patients' claimed privacy interests do not support quashal. ..................... 22

    VI.    The district court erred in entering injunctive relief and in quashing the subpoena in full. .................................................................. 25

CONCLUSION ..................................................................................................... 27

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Burger v. Am. Mar. Officers Union*,
170 F.3d 184, 1999 WL 46962 (5th Cir. 1999)................................................................ 3

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) ........................................................................................................ 6

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ...................................................................................................... 18

*Clauson v. Smith*,
823 F.2d 660 (1st Cir. 1987) ........................................................................................ 24

*Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*,
713 F.3d 71 (11th Cir. 2013) ......................................................................................... 3

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ...................................................................................................... 18

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ...................................................................................................... 23

*Doe v. United States*,
253 F.3d 256 (6th Cir. 2001) .............................................................................12, 14, 21

*Donaldson v. United States*,
400 U.S. 517 (1971) ...................................................................................................... 18

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ...................................................................................................... 25

*EEOC v. Univ. of Penn.*,
850 F.2d 969 (3d Cir. 1988)............................................................................................ 3

*Endicott Johnson Corp. v. Perkins*,
317 U.S. 501 (1943) .................................................................................................12, 15

*F.T.C. v. Swanson*,
560 F.2d 1 (1st Cir. 1977) ...........................................................................................9, 11

*In re Admin. Subpoeana No. 25-1431-019*,
No. 25-cv-91324 (D. Mass.) ........................................................................... 16

*In re Bartle*,
560 F.3d 724 (7th Cir. 2009) ............................................................................ 6

*In re Search Warrant (Sealed)*,
810 F.2d 67 (3d Cir. 1987) .............................................................................. 14

*In re Subpoena Duces Tecum*,
228 F.3d 341 (4th Cir. 2000) ..................................................................... 22, 23

*In re Wade*,
948 F.2d 1122 (9th Cir. 1991) .......................................................................... 7

*Iraq Middle Mkt. Dev. Found. v. Harmoosh*,
848 F.3d 235 (4th Cir. 2017) ........................................................................... 2

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
342 U.S. 180 (1952) ......................................................................................... 7

*Luig v. N. Bay Enters., Inc.*,
817 F.3d 901 (5th Cir. 2016) ............................................................................ 7

*Lynn v. Biderman*,
536 F.2d 820 (9th Cir. 1976) ..................................................................... 18, 19

*Maldonado-Cabrera v. Anglero-Alfaro*,
26 F.4th 523 (1st Cir. 2022) ............................................................................. 2

*McPhaul v. United States*,
364 U.S. 372 (1960) ....................................................................................... 21

*Nat'l Health Fed'n v. Weinberger*,
518 F.2d 711 (7th Cir. 1975) ............................................................................ 5

*Nyer v. Winterthur Int'l*,
290 F.3d 456 (1st Cir. 2002) .......................................................................... 17

*Okla. Press Pub. Co. v. Walling*,
327 U.S. 186 (1946) ....................................................................................... 21

*Save Power Ltd. v. Syntek Fin. Corp.*,
121 F.3d 947 (5th Cir. 1997) ........................................................................ 2, 5

iii

*Schnabel v. Ramsey Quantitative Sys., Inc.*,
 322 F. Supp. 2d 505 (S.D.N.Y. 2004)........................................................................ 3

*Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*,
 584 F.3d 340 (1st Cir. 2009)..........................................................................19, 20

*TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*,
 91 F.3d 1 (1st Cir. 1996) ..................................................................................... 4

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) ........................................................................................... 18

*Travelers Indem. Co. v. Bailey*,
 557 U.S. 137 (2009) ............................................................................................. 6

*Trump v. CASA, Inc.*,
 606 U.S. 831 (2025) ........................................................................................... 26

*U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*,
 847 F.2d 775 (11th Cir. 1988) ............................................................................ 7

*United States v. Bacto-Unidisk*,
 394 U.S. 784 (1969) ........................................................................................... 13

*United States v. Caronia*,
 703 F.3d 149 (2d Cir. 2012)............................................................................... 10

*United States v. Comley*,
 890 F.2d 539 (1st Cir. 1989) ........................................................................8, 17

*United States v. Evers*,
 643 F.2d 1043 (5th Cir. 1981) ........................................................................... 11

*United States v. Freedom Church*,
 613 F.2d 316 (1st Cir. 1979) .............................................................................. 12

*United States v. Gertner*,
 65 F.3d 963 (1st Cir. 1995) .......................................................... 15, 18, 19, 20

*United States v. Gleason*,
 No. 1:06-cr-229 (E.D.N.Y.) ..........................................................................10, 13

*United States v. Harrington*,
 388 F.2d 520 (2d Cir. 1968).............................................................................12, 15

*United States v. Kravetz,*
706 F.3d 47 (1st Cir. 2013) .............................................................................. 23

*United States v. Kroger Co.,*
No. 1:25-MC-17, 2025 WL 3275941 (S.D. Ohio Nov. 25, 2025) ............................. 24

*United States v. Morton Salt Co.,*
338 U.S. 632 (1950) ......................................................................................... 21

*United States v. Norwood,*
420 F.3d 888 (8th Cir. 2005) ............................................................................ 20

*United States v. Powell,*
379 U.S. 48 (1964) ........................................................................................... 20

*United States v. Regenerative Scis., LLC,*
741 F.3d 1314 (D.C. Cir. 2014) ........................................................................ 24

*United States v. Skrmetti,*
605 U.S. 495 (2025) ......................................................................................... 16

*United States v. Sturm, Ruger & Co.,*
84 F.3d 1 (1st Cir. 1996) ........................................................................... 8, 9, 22

*United States v. Tiffany Fine Arts, Inc.,*
718 F.2d 7 (2d Cir. 1983) ................................................................................. 19

*United States v. Wilson,*
98 F.4th 1204 (10th Cir. 2024) ........................................................................ 25

*United States v. Zadeh,*
820 F.3d 746 (5th Cir. 2016) .............................................................................. 7

*Usery v. Whitin Mach. Works, Inc.,*
554 F.2d 498 (1st Cir. 1977) ............................................................................ 20

*Ven-Fuel, Inc. v. U.S. Dep't of the Treasury,*
673 F.2d 1194 (11th Cir. 1982) .......................................................................... 4

*Walker v. City of Birmingham,*
388 U.S. 307 (1967) ........................................................................................... 7

*Young v. L'Oreal USA, Inc.,*
526 F. Supp. 3d 700 (N.D. Cal. 2021) ................................................................. 3

v

**Statutes**

18 U.S.C. § 3486 ........................................................................................ 8, 21

18 U.S.C. § 3486(c) ..................................................................................... 4, 17

21 U.S.C. § 321(m) .................................................................................... 11, 14

21 U.S.C. § 333(a)(2) ...................................................................................... 13

21 U.S.C. § 352(a) ........................................................................................... 11

**Regulations**

45 C.F.R. § 164.512(d) .................................................................................... 24

45 C.F.R. § 164.512(f)(1) ........................................................................... 24, 25

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Few cases present a clearer affront to judicial comity. A district court in the Northern District of Texas enforced a subpoena issued to Rhode Island Hospital (RIH), and RIH is contesting that judgment on appeal before the Fifth Circuit. Yet the district court here countenanced an assault on the Texas court's order outside the appellate process, allowing RIH to bring a separate subpoena quashal action here, enjoining the Department from receiving the very documents the Texas court had determined RIH should produce, and concurrently adjudicating another challenge to the subpoena brought by the Rhode Island Child Advocate.

This Court should reverse and make clear that this unprecedented course of events is unacceptable in the federal system. Even if this Court were to reach the merits of the dispute, Appellees fail to rehabilitate the district court's fundamentally flawed ruling that the subpoena was invalid. Their arguments improperly seek to pre-adjudicate the lawfulness of particular conduct under the Food, Drug, and Cosmetic Act (FDCA), ignore or misapply the governing standard for relevance in the administrative subpoena context, rest on a conception of "improper purpose" that would render any industry or practice that is the subject of political controversy free from potential investigation for violations of existing federal law, and put forward a novel constitutional privacy theory that would hobble the government's ability to investigate health care offenses. This Court should reverse.

## ARGUMENT

**I.    The district court erred in adjudicating the motions to quash given the first-filed Texas action.**

Before this case was filed, the Texas court entered an order enforcing the subpoena at issue. Under basic principles of comity, any request for relief from that order should have been directed to the Texas court or the Fifth Circuit. The judicial system cannot function if any party impacted by the order of one district court can seek relief from another. That is especially true in this context, where clarity and consistency as to a subpoena's enforceability are essential for all involved.[1] But rather than exhibit the "deference and respect crucial to comity," *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 240 (4th Cir. 2017), the district court endorsed an unprecedented attack on a sister court's order. This is error in multiple respects.

**A.** To begin, the first-filed doctrine required the district court here to stay, dismiss, or transfer the second-filed action. For purposes of comity and economy, the first-ruled rule provides that a federal district court faced with a suit substantially similar to one pending elsewhere in the federal system should usually "defer" to the first court. *Maldonado-Cabrera v. Anglero-Alfaro*, 26 F.4th 523, 526 (1st Cir. 2022) (quotation omitted); *see Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). This deference includes allowing the first-filed court to determine which forum will hear the second

---

[1] And this remains true even assuming the Advocate is correct that patients can move to quash based on informational-privacy grounds. *See* Govt.Br.26-27.

case. *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 510-11 (S.D.N.Y. 2004). Because the requisite level of similarity existed here, especially after RIH intervened, the district court erred in refusing to apply the rule. Govt.Br.22-25.

The arguments RIH and the Advocate advance for ignoring the first-filed rule fail. RIH first contends (RIH.Br.24-25) that the rule does not apply because the Texas case is on appeal. But courts have routinely "held that a case can still be considered the first-filed action even if it is pending on appeal," *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 704 (N.D. Cal. 2021), and RIH cites no case to the contrary. This makes sense—"the same policy concerns for avoiding duplicative litigation and comity exist when a similar matter is pending in a federal district court and a federal court of appeals in a different circuit." *Burger v. Am. Mar. Officers Union*, 170 F.3d 184, 1999 WL 46962 at *1 (5th Cir. 1999) (per curiam); *EEOC v. Univ. of Penn.*, 850 F.2d 969, 974 (3d Cir. 1988) (noting "obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals" (quotation omitted)). And for the same reason, RIH's objection that the court here could not have transferred the suit to Texas (RIH.Br.24-25) fails; even assuming that were correct, the first-filed rule would counsel either staying or dismissing the second-filed suit. *See Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013).

RIH separately contends (RIH.Br.25-26) that the Texas judgment is not entitled to res judicata effect because RIH did not have an adequate opportunity to litigate the

3

Texas case. That misses the point entirely. RIH is free to challenge the validity of the Texas judgment in its pending appeal before the Fifth Circuit on the ground that it was entered without due process, in addition to its other contentions. The point is that those questions should be resolved in the first-filed action, rather than simultaneously in competing proceedings, with the concomitant "possibility of conflicting judgments" that the first-filed rule is designed to avoid. *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996) (per curiam). Whether the Texas judgment is "binding in Rhode Island" (RIH.Br.26) as a res judicata matter thus has no bearing on whether the first-filed rule applies.

The same principles undermine RIH and the Advocate's passing arguments that an exception to the first-to-file rule applies. Advocate.Br.16-17; RIH.Br.25.n11. That argument largely attempts to litigate another of RIH's objections that it can raise in its Fifth Circuit appeal: that the Northern District of Texas was not a proper venue for the subpoena enforcement action. The Texas court has determined that the subpoena enforcement action had ample connection to that district, *see* JA313, and in any event, the Department exercised its statutory right to bring enforcement proceedings in any jurisdiction in "which the investigation is carried on." 18 U.S.C. § 3486(c). And separately, RIH does not—and could not—contend that it threatened to initiate a suit that the Texas action was designed to anticipate. *See* RIH.Br.25.n11; *see also, e.g.*, *Ven-Fuel, Inc. v. U.S. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (declining to

4

apply first-filed rule where suit was filed the day after plaintiff was advised defendant would be initiating suit).

Finally, solely for itself, the Advocate contends that the cases are not sufficiently similar because she was not a party in Texas. Advocate.Br.15-16. But, as the Department has already explained, "[c]omplete identity of parties" is not required. *Save Power Ltd.*, 121 F.3d at 951; *see also Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711, 713 (7th Cir. 1975). Attempting to explain away this reality, the Advocate contends that the rule only applies if the different parties are "legally identical." Advocate.Br.16. But the Advocate fails to convince that the relationship between RIH and its patients is materially distinct from the relationship in *Save Power Ltd.*—where a party in the second-filed case was a "shell corporation" affiliated with one of the owners of a plaintiff in the first-filed action—and there the Fifth Circuit concluded that the district court erred by failing to apply the first-filed rule. 121 F.3d at 949-52. In seeking relief from the Texas court, RIH "represented" the Advocate's "interest" in patients' privacy. *Id.* at 951; *see* JA186-87. And the overlap between two cases is otherwise "nearly complete." Govt.Br.25.

**B.** Separately, RIH's pursuit of relief in the district court runs afoul of the collateral attack doctrine. Govt.Br.22-24. RIH agrees that this doctrine generally forbids a party from challenging "a final judgment's validity in a separate proceeding," but again contends that the Texas court's judgment was entered before RIH had "notice

5

and an opportunity to be heard." RIH.Br.26-27.[2]  Here, too, that argument confuses matters.  RIH cites no case allowing a party to collaterally attack a judgment still pending on appeal on the ground that it was entered without due process; that is the very function of the direct appeal process in which RIH is actively participating in the Fifth Circuit.  Indeed, RIH's apparent theory is that the district court's judgment here would be proper even if the Fifth Circuit rejects RIH's contention that it was denied due process and that judgment becomes final.  The collateral-attack doctrine precludes such results, directing parties to pursue an appeal before the appropriate court rather than "seriously undercutting the orderly process of the law" by soliciting competing rulings. *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995).

In any event, to the extent this Court could properly anticipate the Fifth Circuit's review of the question, RIH received "a fair chance to challenge" the enforcement order before it had any obligation to produce responsive documents. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 (2009).  The Texas court's order did not require compliance for fourteen days, and RIH took advantage of this opportunity by presenting its merits arguments to the Texas court in a motion to stay, which the Texas court denied after adjudicating them *de novo*.  JA179-87.  This opportunity to be heard remedied any due process issue.  *See In re Bartle*, 560 F.3d 724, 730 (7th Cir. 2009) (concluding that

---

[2] The Department has not "abandoned" application of the collateral attack doctrine by not preempting RIH's due-process argument.  RIH.Br.30; *see* Govt.Br.22-24.

appellant did not suffer a "complete denial of the opportunity to be heard" when he "had the opportunity to be heard via his motion to alter or amend"); *In re Wade*, 948 F.2d 1122, 1125 (9th Cir. 1991) (no denial of due process when the court "thoroughly considered" arguments raised in "motion for reconsideration"); *see also Luig v. N. Bay Enters., Inc.*, 817 F.3d 901, 905 (5th Cir. 2016) (concluding that "the procedural defect of the district court's effective sua sponte grant of summary judgment was cured" when the party had "the opportunity to present all of its arguments and evidence" in a Rule 59(e) motion); *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 847 F.2d 775, 778 (11th Cir. 1988) ("Cases have consistently held that a violation of procedural due process may be waived or cured."). In addition, the Fifth Circuit will "review the district court's conclusions of law underlying its decision to enforce the subpoena *de novo*." *United States v. Zadeh*, 820 F.3d 746, 750 (5th Cir. 2016). Until then, the Texas court's order is "to be respected." *Walker v. City of Birmingham*, 388 U.S. 307, 313 (1967).

\*   \*   \*

The district court flouted basic principles of comity and attacked a sister court's judgment. This Court should confirm that such maneuvering is antithetical to the "[w]ise judicial administration" required of federal district court judges, *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and reverse.

7

## II.    The subpoena is valid and lawfully issued.

An administrative subpoena is enforceable if "(1) the subpoena is issued for a congressionally authorized purpose, the information sought is (2) relevant to the authorized purpose and (3) adequately described, and (4) proper procedures have been employed in issuing the subpoena." *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 4 (1st Cir. 1996). That standard, which is "not onerous," is met here. *Id.*; *see* Govt.Br.29-38. Appellees' arguments to the contrary fail to convince.

### A.    Congress authorized issuance of the subpoena.

The first element considers whether "Congress has vested the [agency] with the authority to issue subpoenas in conjunction" with investigations within the agency's statutory authority and whether the agency has invoked an authorized purpose "as one of the purposes underlying its subpoena." *United States v. Comley*, 890 F.2d 539, 542 (1st Cir. 1989). All agree that the Department can issue subpoenas under 18 U.S.C. § 3486 to investigate FDCA offenses. Advocate.Br.25; RIH.Br.33; *see* Add.16.[3]  Even so, Appellees argue, and the district court concluded, that the Department lacks a valid FDCA theory. *See, e.g.*, Advocate.Br.24-30; RIH.Br.33-45; Add.42-46.

That is wrong for multiple reasons. At the outset, this Court has long recognized that subpoena proceedings are not to be used to pre-litigate potential statutory theories of liability; a subpoena is enforceable even if the agency's "regulatory jurisdiction" is

___

[3] The Department is not using this subpoena to investigate violations of the False Claims Act. *Contra* Advocate.Br.25.

"clouded." *F.T.C. v. Swanson*, 560 F.2d 1, 2 (1st Cir. 1977); *see Sturm*, 84 F.3d at 5 (applying the "obviously apocryphal" standard). The subpoena here easily satisfies that standard.

In response, Appellees (like the district court) contest at length a theory of liability that the Department has *never* put forward. The Department has made clear that it does "not contend that the act of writing a prescription for an off-label use would, in and of itself, give rise to FDCA liability." Dkt. 9 at 27; Govt.Br.35. Appellees arguments on this score (Advocate.Br.26-28, 30; RIH.Br.35-36) thus attack a strawman.

Appellees' responses to the theories the Department has in fact articulated are no more persuasive. The Department has explained that it is investigating potential misbranding by drug manufacturers and distributors. No one disputes that such entities can violate the FDCA. *See, e.g.*, Advocate.Br.34; RIH.Br.37-38. Nor is there any serious dispute that RIH—as the recipient of communications from drug manufacturers and distributors—may be a witness to such misconduct. For example, seeking evidence of communications RIH received from such entities, JA67, plainly seeks information relevant to a potential FDCA violation, as such communications could show efforts to promote a drug for off-label uses to doctors and hospitals. RIH is thus simply wrong to suggest (RIH.Br.37-38) that only entities "upstream" of RIH could have relevant information. The Advocate, by contrast, does not dispute that RIH may have relevant information as a witness, instead asserting only that there is no "evidence that DOJ has subpoenaed or investigated pharmaceutical *manufacturers* or *distributors* for their practices

9

in marketing drugs used by providers to treat gender dysphoria." Advocate.Br.34.  Of course, there is no requirement that the Department issue subpoenas to manufacturers or distributors first, and it would not be uncommon for an investigation to seek relevant information from others before seeking information directly from entities of interest. Nor is there any requirement that the Department disclose every investigative step it has taken to demonstrate the validity of any particular subpoena.

The Department also explained that the information returned by the subpoena could demonstrate misconduct by RIH or its employees under the FDCA.  Start with the possibility that RIH or its providers conspired with drug manufacturers or distributors to misbrand drugs in violation of the FDCA—a theory the Department has previously charged.  *See, e.g.*, Indictment, *United States v. Gleason*, No. 1:06-cr-229 (E.D.N.Y. Apr. 5, 2006), Dkt. 8 (*Gleason* Indictment).  Such a conspiracy could involve, for example, a drug manufacturer paying a doctor to promote and prescribe for an off-label use and then the doctor concealing this arrangement by listing a false diagnosis code.  Such a theory would not "transform every lawful act of off-label prescribing into a federal crime."  RIH.Br.41.  The Advocate challenges this theory by noting that the Second Circuit later vacated the conviction of a co-conspirator of Gleason's. Advocate.Br.34.  But the reason for the Second Circuit's decision was its conclusion that truthful off-label speech is not itself illegal, not that a doctor cannot conspire with a manufacturer or distributor to violate the FDCA.  *See United States v. Caronia*, 703 F.3d 149 (2d Cir. 2012).

10

There is also the possibility that RIH or its employees engaged in misbranding by disseminating false or misleading "written, printed, or graphic matter . . . accompanying" the drug. 21 U.S.C. § 321(m); *see id.* § 352(a).[4]  RIH does not dispute that doctors must comply with § 352(a), *see* RIH.Br.34, or that doctors can violate that provision by attaching false or misleading statements to a drug's labeling.  Instead, RIH argues that the subpoena does not seek documents related to this theory.  RIH.Br.43-44.  But Request 13, for example, seeks relevant evidence in the form of documents containing "any disclosures about off-label use . . . and potential risks."  *See infra* at 14.  And the Advocate's more sweeping argument that physicians are exempt from § 352(a), Advocate.Br.29, not only improperly asks this Court to pre-determine the validity of a particular theory of FDCA liability before any enforcement action has been brought, but also is not supported by the lone appellate case it cites.  *See United States v. Evers*, 643 F.2d 1043, 1050 (5th Cir. 1981) ("A practicing physician may also fall within the bounds of this section.").

The Department has not "wander[ed] unconscionably far afield" from its FDCA authority.  *Swanson*, 560 F.2d at 2.  The district court erred in concluding otherwise.

---

[4]  Appellees argue that this specific theory was not discussed below. Advocate.Br.29n.9; RIH.Br.43.  But the Department argued below that it was not "obviously apocryphal" for the government to investigate whether RIH distributed or caused "the distribution of an approved drug with false or misleading labeling for an unapproved use."  Dkt. 9 at 19.

### B.     The subpoena's requests are relevant.

Appellees also challenge the relevance of the subpoena's requests to an FDCA investigation.  Advocate.Br.31-37; RIH.Br.37-38, 40-41, 42-43.  The test for relevance in the context of an administrative subpoena is "whether the documents requested pursuant to the subpoena are relevant to the . . . investigation being undertaken."  *Doe v. United States*, 253 F.3d 256, 266 (6th Cir. 2001).  Judicial intervention is warranted only when a request is "plainly incompetent or irrelevant to any lawful purpose of" the Department under the relevant statute.  *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943).

Neither Appellee applies this standard.  Instead, the Advocate contends that a "'higher' standard for relevancy" applies.  Advocate.Br.31.  But the case the Advocate cites says that, with respect to a "summons directed at the entity under investigation," the "showing of relevancy need only be minimal."  *United States v. Freedom Church*, 613 F.2d 316, 321 (1st Cir. 1979).  Appellees also rely on *United States v. Harrington*, which counsels that evidence is relevant if there is an "indication of a realistic expectation . . . that something may be discovered" about the lawfulness of the conduct at issue.  388 F.2d 520, 524 (2d Cir. 1968).  That standard supports the subpoena's legitimacy.

The investigation at issue is intended to determine whether drug manufacturers and/or RIH violated the FDCA.  All fifteen requests are relevant to the general purposes of this investigation.  Appellees do not appear to disagree with respect to Requests 7-10, which seek documents related to the relationship between RIH and drug

12

manufacturers and can provide evidence of off-label promotion and a conspiracy. *See* Advocate.Br.34.

The rest of the requests are relevant too. Request 1 seeks personnel files to identify who at RIH may be involved in violations of the FDCA and who may have information relevant to such violations. JA66. Requests 2 through 6 seek documents bearing on whether false billing occurred. Govt.Br.31. Appellees argue that these requests do not seek relevant information because false or fraudulent billing is not a violation of the FDCA. Advocate.Br.32; RIH.Br.43n.14. But evidence of intent to defraud or mislead is relevant to the Department's investigation because fraudulent or misleading intent enhances the criminal penalties under the FDCA. *See* 21 U.S.C. § 333(a)(2). Appellees' main response—that evidence of fraud is irrelevant without an underlying FDCA violation, Advocate.Br.32; RIH.Br.43n.14—fails to account for the possibility that false billing can serve to conceal a conspiracy to misbrand. *See, e.g.*, *Gleason* Indictment ¶ 14. And the argument that "there is no basis for an investigation into fraudulent billing" given applicable insurance coverage (Advocate.Br.32-33) is also no reason to affirm. The Department has evidence that raises suspicions of fraudulent billing, *see* JA100-01, and it is entitled to determine why claims were coded the way they were.

Requests 11 through 15 are also relevant. JA87-88. In an investigation aimed at "protect[ing] the public health," *United States v. Bacto-Unidisk*, 394 U.S. 784, 798 (1969), evidence as to who received potentially misbranded drugs (Request 11) and what

13

happened to those patients (Request 15), is obviously relevant to the "investigation being undertaken," *Doe*, 253 F.3d at 266.

Patient records (Request 12) are essential in determining whether RIH—an entity "suspected of submitting fraudulent medical reimbursement claims," Advocate.Br.35—conspired to violate the FDCA. Most importantly, with the patient records, the Department will be able to determine why the drugs were used. *Cf. In re Search Warrant (Sealed)*, 810 F.2d 67, 73 (3d Cir. 1987). If for an off-label purpose, the records may reveal patterns suggestive of off-label promotion, such as a shift toward a preference for a particular company's drug following a meeting with a pharmaceutical company representative. And they also could reveal evidence suggestive of fraud, for example, a shift in diagnostic or billing codes across multiple patients following a meeting with a pharmaceutical company representative. This explanation—fully keyed to misbranding—rebuts the claim that the Department is merely focused on false billing for its own sake.

Disclosures about off-label uses (Request 13) can provide evidence of drug labeling—which includes any "written, printed, or graphic matter . . . accompanying" the drug, 21 U.S.C. § 321(m)—and are thus relevant to the Department's investigation into whether RIH disseminated false or misleading labeling. And RIH's communications related to the safety of puberty blockers or hormones used in the treatment of minor patients (Request 14) can provide evidence about whether, if RIH added labeling, it did so knowing the additional labeling was false and misleading.

14

For the foregoing reasons, the requested materials—the existence of which is undisputed—will "throw light upon the correctness" of the conduct at issue, *Harrington*, 388 F.2d at 524, and the subpoena otherwise meets the minimal standard for relevance in this context, *see Endicott*, 317 U.S. at 509.

## III.    No improper purpose justifies quashal.

### A.    There is no improper purpose here.

As the Department explained (Govt.Br.39-43), the district court committed a legal error when it concluded that the administration's policy views meant that the Department issued the subpoena for an improper purpose.  Appellees' responses largely repeat the district court's errors.

Appellees claim that the investigation's timeline—along with statements from administration officials—is evidence of pretext.   Advocate.Br.38-39; RIH.Br.47-49. But there is nothing in these statements, or in anything else Appellees cite,[5] that demonstrates the administration is uninterested in enforcing the FDCA, while the subpoena itself demonstrates such interest.  *See* RIH.Add.16-17; *cf. United States v. Gertner*, 65 F.3d 963, 969 (1st Cir. 1995) (citing "several public statements" that implied

---

[5] The fact that certain institutions agreed to cease operations rather than face potential liability under the FDCA and other federal statutes is not inconsistent with the Department's desire to "prosecute legitimate FDCA violations."  Advocate.Br.40. Parties commonly agree to terms that exceed the demands of federal law to settle legitimate investigations of currently existing law, and that is exactly what happened here.  That the Department's investigation has proceeded like investigations often do is a sign of legitimacy, not impropriety.

IRS was uninterested in its stated purpose). And neither Appellee addresses the sweeping consequences of their position: the federal government could no longer simultaneously advocate for "rational" policy positions, *United States v. Skrmetti*, 605 U.S. 495, 523 (2025), and enforce existing law in the same area. Instead, a recipient could obtain quashal by pointing to an administration's desire for policy change in their sector and claiming an ulterior motive. *See* Govt.Br.42-43.

Appellees also claim that "shifting statutory justifications" demonstrate pretext. RIH.Br.45-47; *see* Advocate.Br.38. But there has been no such shift. The Department has long been clear that the HIPAA subpoenas are part of an FDCA investigation, s*ee, e.g.*, *In re Admin. Subpoena No. 25-1431-019*, No. 25-cv-91324 (D. Mass. July 23, 2025) (Dkt. 21 at 4) ("[T]he subpoena was issued in the investigation of FDCA-related federal health care offenses."), and identified the misbranding and conspiracy theories outlined in this briefing, *see id.* Dkt. 37 at 5, 14. And more generally, the evolution of an investigation over time is both ordinary and salutary: as evidence is gathered, some lines of inquiry may prove fruitless while others are fruitful, or evidence may raise concerns about violations not anticipated when the investigation began.

Appellees next argue that the Department's "litigation conduct" is evidence of bad faith. Advocate.Br.40-41; RIH.Br.49-50. It is difficult to see how the purpose behind a subpoena for information issued in July 2025 could be altered by litigation conduct nine months (or more) later, after only one document had been produced in the interim. But in any event, the Department's decision to enforce in the Northern

16

District of Texas is one that Congress authorized. *See* 18 U.S.C. § 3486(c). Appellees' reference (Advocate.Br.40-41; RIH.Br.49-50) to the district court's statements about the Department's conduct have already been addressed in our opening brief, *see* Govt.Br.14n.2, 32n.5, and for its part, RIH does not dispute that the letter it describes as conveying "proposed search terms" (RIH.Br.11; *accord* RIH.Br.12, 29), does not state that the terms are offered as proposal or request a response from the Department, Add.53-56. RIH also cites the issuance of alleged grand jury subpoenas as evidence of improper litigation conduct. RIH.Br.49-50.[6] But any additional and legitimate federal actions—including exercises of the "core executive power" to enforce federal law, Govt.Br.43—provide no evidence of bad faith for the same reason that the issuance of this subpoena does not.

This Court requires "firm evidence" of improper purpose to justify quashing a subpoena. *Comley*, 890 F.2d at 542-43. And a subpoena recipient bears a heavy burden in seeking such a relief. Here there is nothing more than policy statements with which Appellees disagree and actions taken to enforce legitimate process in an FDCA investigation. This Court need not "second-guess" any "factual finding" (RIH.Br.32) to hold that there is no improper purpose here as a matter of law. *Nyer v. Winterthur Int'l*, 290 F.3d 456, 461 (1st Cir. 2002).

---

[6] Pursuant to Federal Rule of Criminal Procedure 6(e), the Department cannot confirm or deny assertions concerning the issuance of grand jury subpoenas.

## B.    The district court's improper purpose conclusion could not justify quashal.

Even if those policy views could be construed as relevant to the improper purpose inquiry, that still would not justify quashal. This Court has made clear that quashal is unwarranted when a proper purpose is paired with an improper one. *Gertner*, 65 F.3d at 970; *see Lynn v. Biderman*, 536 F.2d 820, 826 (9th Cir. 1976). The Supreme Court has said the same. *Donaldson v. United States*, 400 U.S. 517, 533 (1971). That rule is a wise one: it prevents every subpoena dispute from devolving into a disfavored inquiry into the motives of Executive Branch officials, *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); is consistent with the rule that "a court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons," including being "prompted by an Administration's priorities," *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019); and avoids unnecessary interference with the core Executive function of choosing "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021).

Here, the Department issued the subpoena for the "proper purpose" of investigating potential violations of the FDCA, meaning quashal is unwarranted regardless of what this Court makes of Appellees' improper purpose arguments. Appellees first respond by arguing that there is *no* proper purpose supporting the

18

subpoena's issuance, which simply repeats the erroneous arguments about the subpoena discussed above. *See supra* at 8-11.

RIH (but not the Advocate) goes further, attempting to dispute *Gertner*'s sole-purpose standard. RIH argues that *Gertner* stands for the proposition that a "sole [improper] purpose" is "sufficient" rather than "necessary" for quashal, RIH.Br.56, but *Gertner* distinguished a case—*United States v. Tiffany Fine Arts, Inc.,* 718 F.2d 7 (2d Cir. 1983)—in which the issuing agency had two purposes, one proper and one improper, 65 F.3d at 970-71. Alternatively, RIH argues that cases arising from an "IRS investigation" are different. RIH.Br.56-57. But the rationales discussed above that support the sole-purpose rule are not limited to tax cases, which is why the Ninth Circuit has applied the same principle in enforcing a non-tax administrative subpoena even though the relevant agency administrator—an employee of the Department of Housing and Urban Development—had a purpose that "was not a legitimate" one, because there was "also a legitimate purpose." *Biderman*, 536 F.2d at 826.

Finally, RIH argues that *Gertner*'s "sole purpose" rule is inconsistent with this Court's burden-shifting framework, which allows a recipient, after the government meets its burden, to either "disprove" the Department's showing "or" to show that the subpoena was "issued in bad faith for an improper purpose." *Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340, 346 (1st Cir. 2009) (quotation omitted). But as *Gertner* itself illustrates, in rare circumstances an agency may "effectuate[] its prima facie showing" for the validity of a subpoena but ultimately be held to have issued it solely

19

for an improper purpose. 65 F.3d at 968. And *Sugarloaf Funding* otherwise only reinforces the validity of the subpoena here, emphasizing that an agency "may investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not,'" and that the "claimed legality" of a party's conduct is "beyond the scope" in a subpoena enforcement context. 584 F.3d at 347 (quoting *United States v. Powell*, 379 U.S. 48, 57 (1964)).

Finally, even if RIH were correct that an otherwise legitimate subpoena could be quashed if there was also an improper purpose for its issuance, RIH would not succeed. RIH agrees that a subpoena is enforceable if it has "legitimate statutory authorization" and "no overriding improper purpose." RIH.Br.59. Both criteria are met here: the overriding, indeed sole, purpose of the subpoena is to investigate potential violations of the FDCA.

## IV.   The subpoena's breadth does not justify quashal.

RIH claims that the subpoena's "unreasonable scope" provides an alternative ground for affirmance. RIH.Br.59-65; *see also* Advocate.Br.35-36. This Court should reject that argument for two reasons.

First, overbreadth is not an alternative ground for affirmance. This Court has specified that overbreadth would at most be a starting point to narrow the subpoena, not quash it entirely. *Usery v. Whitin Mach. Works, Inc.*, 554 F.2d 498, 503 (1st Cir. 1977); *see, e.g.*, *United States v. Norwood*, 420 F.3d 888, 896 (8th Cir. 2005). And the Supreme Court has been clear that the subpoena recipient must first make "reasonable efforts"

20

to obtain "reasonable conditions" before arguing that a request is "arbitrarily excessive." *United States v. Morton Salt Co.,* 338 U.S. 632, 653 (1950). RIH's contention that the subpoena is unreasonable because the Department has offered no limiting "accommodation," RIH.Br.64, thus gets matters backwards.

In any event, as the Department explained in its opening brief, the subpoena is not overbroad. *See* Govt.Br.33. Whether a subpoena is overbroad turns on "the nature, purposes and scope of the inquiry." *Okla. Press Pub. Co. v. Walling,* 327 U.S. 186, 209 (1946). With § 3486, Congress gave "broad subpoena power" to the Attorney General. *Doe,* 253 F.3d at 265. And the subpoena to RIH, which is like other subpoenas "in this area," Govt.Br.33, stems from a "broad" investigation, *McPhaul v. United States,* 364 U.S. 372, 382 (1960).

RIH's specific overbreadth arguments begin by underscoring its failure to seek appropriate accommodations. RIH argues that the request for personnel files is overbroad because it is not limited to "personnel involved in gender-affirming care." RIH.Br.60. But in context, this limitation is clearly intended, as the Department could have confirmed if RIH had asked. Similarly, RIH's contention that the subpoena is overbroad because it is not limited to exclude records the Department "already possesses," RIH.Br.61, ignores that the Department does not know what responsive records RIH possesses that might overlap with records it already has.

RIH also argues that other requests are overbroad because they relate to gender dysphoria and gender-related care generally, rather than the off-label use of prescription

21

drugs. RIH.Br.61. But these requests can, for example, shed light on the legitimacy of coding or labeling for such prescription drugs and thus are clearly relevant to the investigation.

RIH devotes most of its argument to the requests for records containing patient health information. RIH.Br.62-65. But these documents are relevant to a "legitimate investigatory purpose." RIH.Br.62.; *see supra* at 13-14. And that is all the Department needs to show. *See Sturm*, 84 F.3d at 4. This Court has never held—as RIH urges— that a higher standard than relevance applies simply because a party may have some privacy interest in the records sought, RIH.Br.62-63, and in any event, there is no greater expectation of privacy in the records at issue here than in personal tax records or other sensitive matters routinely turned over to the government in investigations, *see In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000); *infra* at 22-25.

Finally, RIH contends that the request for patient-identifying information is "especially unreasonable and unnecessary" because the Department has agreed to accept, in the first instance, de-identified data. RIH.Br.64-65. The Department has already explained why this is not true. *See* Govt.Br.32n.5.

## V.　Patients' claimed privacy interests do not support quashal.

In the opening brief, the Department explained why the district court erred in concluding that compliance with the subpoena would violate patients' constitutional privacy interests. Govt.Br.44-47. Appellees fail to provide an adequate response.

The Advocate asserts that minors diagnosed with gender dysphoria have a constitutional right to shield their medical records from government investigations into potential misconduct. Advocate.Br.43-48. But this purported right has no basis in "this Nation's history and tradition." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231 (2022). And nothing in this Court's precedents stands for the proposition that a right to informational privacy can trump a legitimate investigative need. Indeed, federal prosecutors constantly obtain and handle the intensely private information of victims, such as when investigating crimes involving sexual violence or child exploitation. And this Court has made clear that the "privacy interest in medical information is neither fundamental nor absolute." *United States v. Kravetz*, 706 F.3d 47, 63 (1st Cir. 2013) (quotation omitted)).

The Advocate's main response—that this case is different because there is no legitimate investigation—is wrong for the reasons above. *See supra* at 8-11. The Advocate's attempt to distinguish *In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000), similarly falls flat. The fact that the Fourth Circuit's rejection of a privacy argument did not come in a case involving "adolescent medicine" is of no moment. *Contra* Advocate.Br.46. If anything, the government's interest in "identifying illegal activity and in deterring future misconduct" is even more compelling in the context of minor victims. *In re Subpoena Duces Tecum*, 228 F.3d at 351. And the Advocate's reference to Federal Rule of Civil Procedure 45, Advocate.Br.42-43, adds nothing here,

23

as the Advocate appears to treat an "undue burden" under that Rule as coextensive with the asserted privacy interest.

The Advocate also claims support from the HIPAA regulations. Advocate.Br.46-47. But on the Advocate's own admission, the Notice of Privacy Practices required by these regulations apprises patients that their information may be disclosed in response to "legally authorized" process that seeks information relevant to a federal investigation. *See* Govt.Br.45-46. And the Advocate's reliance on 45 C.F.R. § 164.512(f)(1)(ii)(C)(1)-(3) provides no reason to affirm. For one, that regulation does not apply to this subpoena. Instead, because the subpoena issued as part of the Department's oversight of the "health care system," 45 C.F.R. § 164.512(d) applies. *Cf. United States v. Kroger Co.*, No. 1:25-MC-17, 2025 WL 3275941, at *2-4 (S.D. Ohio Nov. 25, 2025) (recognizing that Department is "health oversight agency" within meaning of 45 C.F.R. § 164.512(d)(1) and concluding that regulation applies to investigations concerning "healthcare fraud"); *United States v. Regenerative Scis., LLC*, 741 F.3d 1314, 1319 (D.C. Cir. 2014) ("The FDCA enacts a comprehensive, uniform regulatory scheme for the distribution of drugs."). Subsection (d) does not have subsection (f)(1)(ii)(C)'s requirements.

Even if subsection (f)(1)(ii)(C) applied, the Advocate did not challenge compliance with this regulation below and therefore it cannot do so now. *See* JA490; *Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir. 1987). And the Department's requests for patient health information comply with § 164.512(f)(1)(ii)(C) in any event. The

24

information sought is "relevant and material to a legitimate law enforcement inquiry." (C)(1); *see supra* at 13-14. The requests, seeking records related to potential FDCA violations since January 2020, are "specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought." (C)(2); *see United States v. Wilson*, 98 F.4th 1204, 1220 (10th Cir. 2024) (five-year period); JA63, 67-68. Moreover, "[d]e-identified information [cannot] reasonably be used." (C)(3); *see Wilson*, 98 F.4th at 1220-21; JA103-04.

Finally, any privacy interest at most justifies anonymization. The Advocate's response, which does not address the Department's caselaw on the issue, *see* Govt.Br.47n.7, rests on speculation and the burden of anonymization. Advocate.Br.48. Neither justifies complete quashal. And even though the needs of this investigation overcome any privacy interest vis-à-vis the government, if this Court is concerned about disclosure to the public, a protective order, rather than quashal, is warranted. *See* Govt.Br.47.

## VI. The district court erred in entering injunctive relief and in quashing the subpoena in full.

As the Department previously explained, the district court's entry of a permanent injunction was error. Govt.Br.48-49. Appellees acknowledge that the district court did not reference the correct standard, Advocate.Br.51-53; RIH.Br.65-68, which alone is sufficient to vacate, *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). And even if the failure to expressly apply the correct standard were not fatal, Appellees are wrong

on the merits and the harm to the government's legitimate investigation far outweighs the "likely" irreparable harm to Appellees. Add.49.

The Department also explained in its opening brief why the Advocate can seek quashal of only the parts of the subpoena that implicate the specific patients she represents. Govt.Br.49-50. The Advocate (Advocate.Br.49-51) identifies no injury to the interests she purports to represent from RIH's compliance with the subpoena's requests that do not seek patient records, and cannot seek to quash aspects of the subpoena that cause no injury. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (identifying question as "whether an injunction will offer complete relief *to the plaintiffs before the court*"). Moreover, even as to patient records, the Advocate provides no reason to believe that the process of segregating the records of patients in state custody would "expose" any information in those records. *Contra* Advocate.Br.50-51. Therefore, if this Court concludes that only the Advocate's suit was properly in district court, it should limit any resulting relief to only what is necessary to remedy the injuries the Advocate can properly assert.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
JORDAN C. CAMPBELL
*Deputy Assistant Attorney General*

BRAD HINSHELWOOD
/s/ *Brantley T. Mayers*
BRANTLEY T. MAYERS
*Attorneys*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 890-9874*
*brantley.t.mayers@usdoj.gov*

July 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,498 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Brantley T. Mayers*
Brantley T. Mayers